# EXHIBIT A

LEXSEE 1998 US DIST LEXIS 1527



Cited
As of: Oct 23, 2007

**AMERICAN PIONEER TOURS, INC., Plaintiff, -v- SUNTREK TOURS, LTD. and SUNTREK TOURS, INC., Defendants.**

**97 CIV. 6220 (DLC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1998 U.S. Dist. LEXIS 1527*; *46 U.S.P.Q.2D (BNA) 1779*

**February 13, 1998, Decided
February 13, 1998, Filed**

**DISPOSITION:** [*1] Case dismissed for lack of subject matter jurisdiction. Plaintiff's claims dismissed without prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants moved to dismiss, for lack of subject matter jurisdiction, plaintiff's action seeking declaration of trademark non-infringement.

**OVERVIEW:** Plaintiff owned federally-registered mark that it used in marketing its tourist services. Defendant licensor granted license in the same mark plaintiff held to defendant tourism company. Neither defendant held registration to mark. Plaintiff and defendants disputed rights of trademark through correspondence and negotiations, but reached no settlement. Defendants then filed a petition with the United States Trademark and Patent Office to cancel plaintiff's registration. Plaintiff filed claim seeking non-infringement declaration, while defendants moved to dismiss for lack of subject matter jurisdiction. Court held it had no subject matter jurisdiction in the matter as defendant's conduct had not created an apprehension of liability on plaintiff's part, requisite to a finding of a case or controversy in trademark litigation, and the Declaratory Judgment Act, *28 U.S.C.S. § 2201*, provided no independent basis for jurisdiction.

**OUTCOME:** Defendants' motion to dismiss plaintiff's action seeking declaration of trademark non-infringement was granted because the court did not have subject matter jurisdiction to decide the case.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > General Overview*
*Civil Procedure > Declaratory Judgment Actions > General Overview*
[HN1] See *28 U.S.C.S. § 2201(a)*.

*Civil Procedure > Jurisdiction > General Overview*
*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > General Overview*
*Constitutional Law > The Judiciary > Case or Controversy > Advisory Opinions*
[HN2] The Declaratory Judgment Act (Act), *28 U.S.C.S. § 2201*, merely provides a remedy of declaratory relief; it does not create an independent basis for the exercise of

Case 1:07-cv-06399-PAC   Document 12-2   Filed 10/23/2007   Page 3 of 8

Page 2

1998 U.S. Dist. LEXIS 1527, *1; 46 U.S.P.Q.2D (BNA) 1779

subject matter jurisdiction. Therefore, an action for declaratory relief may ordinarily be brought only if subject matter jurisdiction would exist in a coercive action between the parties. A federal court may not render advisory opinions under the Act, but must be satisfied that the parties possess adverse interests giving rise to a real and immediate controversy. There is no bright line for determining whether the dispute presents a substantial controversy or merely an abstract question. Instead, courts must decide whether a justiciable controversy exists on a case-by-case basis.

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
*Civil Procedure > Declaratory Judgment Actions > General Overview*
*Trademark Law > Protection of Rights > General Overview*
[HN3] In the context of a declaratory judgment action concerning trademarks, the United States Court of Appeals for the Second Circuit holds that the test for an "actual case or controversy" has two prongs, both of which must be satisfied in order to establish declaratory judgment jurisdiction: (1) has the defendant's conduct created a real and reasonable apprehension of liability on the part of the plaintiff, and (2) has the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant.

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
[HN4] An indirect threat of suit can be sufficient to satisfy the justiciable controversy requirement.

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
*Trademark Law > U.S. Trademark Trial & Appeal Board Proceedings > Oppositions > General Overview*
[HN5] The United States Court of Appeals for the Second Circuit holds that the filing of an opposition in a trademark registration proceeding is not by itself a charge or warning of a future charge of infringement and therefore does not, without more, create a real controversy.

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
[HN6] Hard bargaining is not the equivalent of threatening a lawsuit.

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
[HN7] In order to resolve a controversy, a court first must have jurisdiction.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > General Overview*
*Trademark Law > U.S. Trademark Trial & Appeal Board Proceedings > Cancellations > General Overview*
[HN8] The Declaratory Judgment Act, *28 U.S.C.S. § 2201*, may not be used simply to remove a controversy from a forum where it properly belongs.

**COUNSEL:** R. Kunstadt, P.C., New York, NY, for Plaintiff.

Roy S. Gordet, San Francisco, CA, for Defendants.

**JUDGES:** DENISE COTE, United States District Judge.

**OPINION BY:** DENISE COTE

**OPINION**

*OPINION & ORDER*

DENISE COTE, District Judge:

In this action, filed on August 8, 1997, the plaintiff, American Pioneer Tours, Inc. ("American") seeks a declaratory judgment that its use of the mark "American Pioneer" does not infringe on any rights owned by the defendants, Suntrek Tours Ltd. and Suntrek Tours, Inc., whom I will refer to collectively as "Suntrek." Suntrek has moved to dismiss the complaint for lack of subject matter jurisdiction or personal jurisdiction or, in the alternative, to dismiss for improper venue. Suntrek has also moved to transfer the case to California, to strike certain portions of the amended complaint, and to quash service of process. In addition, American has filed a motion pursuant to *Rule 11, Fed. R. Civ. P.*, for sanctions

Case 1:07-cv-06399-PAC    Document 12-2    Filed 10/23/2007    Page 4 of 8

Page 3

1998 U.S. Dist. LEXIS 1527, *1; 46 U.S.P.Q.2D (BNA) 1779

against the defendants, which has been held in abeyance pending the Court's decision on the motion to dismiss. For the reasons set forth below, the [*2] defendants' motion to dismiss is granted on the grounds that the Court does not have subject matter jurisdiction.

*Background*

American is a New Jersey corporation with offices in Vermont, engaged in the wholesale of tourism services. American owns a federal registration for the mark "American Pioneer." Suntrek Tours, Inc. is a California corporation with headquarters in San Francisco, engaged in the business of organizing adventure travel tours throughout the United States. Suntrek Tours Ltd. is a Swiss corporation with offices in Zurich. The two Suntrek corporations are distinct entities; however, Suntrek Tours Ltd. licenses its marks, including a mark for "American Pioneer" to Suntrek Tours, Inc. for use in the United States. Neither Suntrek Tours Ltd. nor Suntrek Tours Inc. owns a federal registration for the mark "American Pioneer."

The dispute between the parties arose when, on May 1, 1996, American's counsel sent Suntrek a warning letter asserting American's exclusive right to use the American Pioneer mark. That letter stated, in pertinent part,

> It has come to our attention that you are offering travel tour services under the designation AMERICAN PIONEER and [*3] that the travel tours offered by you are very similar to those offered by our client under its trade name and service mark. While we have no reason to believe that your use of the term AMERICAN PIONEER is a deliberate attempt to trade upon the good will of our client, we do believe that your continued use of the term AMERICAN PIONEER in connection with your services will lead to confusion and mistake in that purchasers will believe there is some connection between you and our client. At the very least, your continued use of the term AMERICAN PIONEER will dilute the value of very valuable assets of our client.
>
> Accordingly, we must ask that you immediately discontinue all use of the term AMERICAN PIONEER and advise us that you have done so. In addition, we must request that you provide us with the volume of gross sales receipts of all travel tours sold by you under the designation AMERICAN PIONEER. Your prompt response to that effect will enable an amicable as well as expeditious conclusion to this matter.

Suntrek's counsel responded to this letter on May 10, 1996, by asserting that Suntrek had superior rights in the mark under common law. Suntrek's response further advised [*4] American that

> unless you [American] have some further information of which we are not aware, Suntrek should be successful in petitioning to cancel your client's trademark registration at the U.S. Trademark Office.
>
> I suggest that you call me to discuss an amicable and expedient resolution of this matter. In any case, I look forward to hearing from you at your earliest convenience.

For months after this initial exchange, the parties attempted to resolve their dispute. In December 1996, the parties having failed to reach an agreement on this matter, Suntrek filed a petition to cancel American's registration for the mark in the U.S. Patent and Trademark Office ("the U.S. Trademark Office"). When the plaintiff filed this suit in August 1997 for declaratory and injunctive relief, the proceedings before the U.S. Trademark Office were stayed pending the disposition of this case.

*Discussion*

The Court finds that it has no subject matter jurisdiction over this case because there is no justiciable controversy. [HN1] The Declaratory Judgment Act ("the Act") provides that

> in a case of actual controversy within its jurisdiction . . . any court of the United States [*5] may declare the rights and other legal relations of any interested party seeking such a declaration . . . . Any such declaration shall have the force and effect of a final judgment or decree and shall be

Case 1:07-cv-06399-PAC   Document 12-2   Filed 10/23/2007   Page 5 of 8

Page 4

1998 U.S. Dist. LEXIS 1527, *5; 46 U.S.P.Q.2D (BNA) 1779

reviewable as such.

*28 U.S.C. § 2201(a)*. [HN2] The Act merely provides a remedy of declaratory relief; it does not create an independent basis for the exercise of subject matter jurisdiction. *See, e.g., Starter Corp. v. Converse, Inc., 84 F.3d 592, 594 (2d Cir. 1996)*. Therefore, an action for declaratory relief may ordinarily be brought only if subject matter jurisdiction would exist in a coercive action between the parties. A federal court may not render advisory opinions under the Act, but must be satisfied that the parties possess adverse interests giving rise to a real and immediate controversy. *Id*. There is no bright line for determining "whether the dispute presents a substantial controversy or merely an abstract question." *Id*. Instead, courts must decide whether a justiciable controversy exists "on a case-by-case basis." *Kidder, Peabody & Co. v. Maxus Energy Corp., 925 F.2d 556, 562 (2d Cir. 1991)*.

[HN3] In the context of a declaratory judgment action concerning [*6] trademarks, the Second Circuit has held that

> the test for an "actual case or controversy" has two prongs, both of which must be satisfied in order to establish declaratory judgment jurisdiction: (1) has the defendant's conduct created a real and reasonable apprehension of liability on the part of the plaintiff, and (2) has the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant.

*Starter Corp., 84 F.3d at 595*. In this case, the Court's inquiry revolves mainly around the first prong of this test. While Suntrek concedes that the parties dispute which of them owns superior rights in the American Pioneer mark, Suntrek denies that it has engaged in any conduct that would create a real and reasonable apprehension of liability on the part of the plaintiff.

It is not seriously disputed that Suntrek has never directly threatened American with litigation. [1] American's contention that a real controversy exists therefore depends largely on its argument that Suntrek has indirectly threatened it. American is correct that [HN4] an indirect threat of suit can be sufficient to satisfy the justiciable controversy requirement. *See* [*7] *Muller v. Olin Mathieson Chemical Corp., 404 F.2d 501, 504 (2d Cir. 1968)* (holding that justiciable controversy exists in context of patent dispute if the defendant has threatened the plaintiff directly or indirectly with a patent suit); *Starter Corp., 84 F.3d 592, 595* (noting that "declaratory judgment actions involving trademarks are analogous to those involving patents . . ., and principles applicable to declaratory judgment actions involving patents are generally applicable with respect to trademarks").

1   The only evidence of a direct threat is the assertion in the affidavit submitted by the President of American, Manfred Hilker, that, when the two presidents met at a trade show in Los Angeles in June 1996, Suntrek's president, Daniel E. Hiltebrand, "said he would sue us [American] for money -- one or two hundred thousand dollars -- unless we signed a settlement with him." Hilker's notes from a telephone conversation with Hiltebrand shortly after that meeting, however, do not indicate any threat of suit. In those notes, Hilker describes a conversation heading toward negotiation rather than litigation. Hilker wrote:

> he [Hiltebrand] called June 25, 1996 at 12.50. I returned call June 25, 1996, 1.30.
>
> He is asking about what kind of suggestion we have to offer to solve trademark problem. His tone was much less aggressive than in LA, but not consistently friendly.
>
> As [sic] the same time he explains himself he threatens that Suntrek has right to American Pioneer's profits of at least last year, if not for the past. Indicates that $ 100000 should be lowest offer to buy name.
>
> He mentions following solutions:
>
> -American pioneer gives up trade mark; an agreement is to be signed stating that both companies tolerate the use of name

Case 1:07-cv-06399-PAC   Document 12-2   Filed 10/23/2007   Page 6 of 8

Page 5

1998 U.S. Dist. LEXIS 1527, *7; 46 U.S.P.Q.2D (BNA) 1779

> -American Pioneer buys name from suntrek, agreement about use is signed
>
> -transfer trade-mark to suntrek, agreement is signed.
>
> hiltebrand demands payments in any case, at least for attorney cost. I indicated that we would be interested to learn about these cost so that can consider whether we might offer an reimbursement.

The President of Suntrek Tours, Inc., Daniel E. Hiltebrand, denies that he ever threatened American with litigation. In his affidavit, he states:

> I have been aware that if I threatened a lawsuit against Plaintiff it could become possible for Plaintiff to initiate a law suit for declaratory relief. I was therefore careful to never threaten a law suit during my various conversations and correspondence with Plaintiff's principal, although I did on at least one occasion threaten that [Suntrek] would initiate a cancellation proceeding at the U.S. Trademark Office. It was clear to me that there should be a comprehensive agreement between the parties to avoid further disagreements in the future.

The rest of the record submitted in connection with this motion is more consistent with Hiltebrand's recollection of events -- i.e., that there was no direct threat of litigation -- than with Hilker's. Even if the threat was made as represented by Hilker, there is no allegation that this threat was ever repeated. Moreover, such a threat would have been at odds with the rest of the course of the negotiations between the parties. In any event, the threat, if in fact it was made in June 1996, would have been a distant memory when the plaintiff filed this action over a year later, in August 1997.

[*8] The Court is not satisfied, however, that Suntrek indirectly threatened American with suit. The documents that have been submitted in connection with this motion reveal that the parties were engaged in negotiations which, although they were tense, did not prompt the defendant to threaten suit even indirectly. At most, Suntrek threatened that it would commence proceedings at the U.S. Trademark Office to cancel American's trademark registration if American did not sign the agreement that had been reached between the parties or propose another mutually acceptable agreement.

[HN5] The Second Circuit has held that the filing of an opposition in a trademark registration proceeding "is not by itself a charge or warning of a future charge of infringement" and therefore does not, without more, create a real controversy. *Topp-Cola Co. v. Coca-Cola Co., 314 F.2d 124, 126 (2d Cir. 1963)*. See also *Progressive Apparel Group, Inc. v. Anheuser-Busch, Inc., 1996 U.S. Dist. LEXIS 1292, 1996 WL 50227*, *2 (S.D.N.Y. 1996) (Cote, J.) Cognizant of the foregoing standard, and in particular this Court's decision in *Progressive Apparel*, American argues that the communications between the parties, viewed in their totality, support [*9] a finding that Suntrek made an indirect threat of litigation against it, and that this Court therefore has subject matter jurisdiction.

For example, American cites a passage from the draft agreement, which ultimately was not signed by the parties, as proof that a controversy in the constitutional sense exists. This passage, taken from the preamble of the three page agreement, reads: "Whereas, a controversy has arisen between the two parties over the use and registration of the mark 'American Pioneer,' . . . ." The agreement then goes on to lay out the conditions whereby the parties agreed to settle their dispute. These conditions included that American would cease using the American Pioneer mark; would transfer its U.S. registration for the mark to Suntrek for valuable consideration; and would not contest Suntrek's asserted rights in the mark. The agreement also called for the payment of $ 5,000 by American to Suntrek concurrently with the execution of the agreement.

Viewed in the context of the entire agreement, the passage cited by American is not evidence of a controversy in the constitutional sense. Instead, it denotes an acknowledgement of the circumstances that led the

Case 1:07-cv-06399-PAC    Document 12-2    Filed 10/23/2007    Page 7 of 8

Page 6

1998 U.S. Dist. LEXIS 1527, *9; 46 U.S.P.Q.2D (BNA) 1779

parties [*10] to draft the agreement. Nor is the fact that Suntrek demanded concessions from American, including monetary payment, proof of an actual controversy. [HN6] Hard bargaining is not the equivalent of threatening a lawsuit. *See Progressive Apparel, 1996 U.S. Dist. LEXIS 1292, 1996 WL 50227*, *3 (S.D.N.Y. 1996) ("seeking to obtain a concession in negotiations is a far cry from threatening to being a coercive lawsuit to obtain the desired result."). *Cf. Broadview Chemical Corp. v. Loctite Corp., 417 F.2d 998, 999 (2d Cir. 1969)* (finding justiciable controversy where defendant communicated to plaintiff and plaintiff's customers that plaintiff was infringing on defendant's patents and defendant "would not hesitate to bring legal action against any appropriate party"). In any event, the nominal sum of $ 5,000 demanded of American under the draft agreement -- when viewed against the history of this negotiation -- appears to have been intended as compensation to Suntrek for its attorneys' fees associated with the negotiation, rather than a disgorgement of American's profits. Indeed, this view of the $ 5,000 payment is consistent with the notes by American's president, laid out above, made contemporaneously with the first [*11] settlement discussions between the parties.

Moreover, American ignores the fact that the draft agreement required Suntrek to pay American valuable consideration for the transfer of American's trademark registration. Thus, the conditions of the agreement, taken as a whole, do not suggest that Suntrek was on the brink of threatening litigation when the agreement was drafted. Instead, the agreement suggests that both parties felt they had something to gain by reaching an amicable agreement.

The conclusion that Suntrek had not communicated an intent to initiate litigation is further supported by the fact that, as noted above, the worst that Suntrek threatened to do in the event that American did not sign the draft agreement was initiate cancellation proceedings at the U.S. Trademark Office. When American did not enter into the agreement or propose another, Suntrek did in fact commence a proceeding at the Trademark Office, which has been stayed pending the resolution of this action, to cancel American's registration.

At no time, however, including now, has Suntrek expressed interest in litigating against American for infringement of the rights it claims to hold. For example, Suntrek [*12] has not counterclaimed in this action to seek damages from the plaintiff for infringement. *See Progressive Apparel*, 1996 WL 50227 at *3 (finding the lack of counterclaims by the defendant persuasive evidence that there was no threat of an infringement suit). Also as in *Progressive Apparel*, the likelihood of the defendant initiating a lawsuit is decreased simply from the fact that the defendant does not have a registered trademark.

Finally, American's argument that the Court should exercise jurisdiction because the Trademark Office cannot award damages or attorneys' fees and therefore the present action is necessary "in order to resolve the controversy between the parties in its totality" is unavailing. This argument misses the point that [HN7] in order to resolve the controversy, the Court first must have jurisdiction. Much as American may wish to resolve all of the issues that remain between the parties through this action, it may not overstate the defendant's threat of litigation in order to put the complete matter before this Court. As the Second Circuit noted of the plaintiff in *Topp-Cola*, American "is not in the position of one who is threatened with legal proceedings but [*13] does not know when or where the blow will fall." *Topp-Cola, 314 F.2d at 126*. Here, if the parties continue to be unable to reach an amicable agreement, the cancellation proceedings that have already been initiated at the U.S. Trademark Office will assist the parties in resolving their dispute. Thus, "the right of both parties will be determined in due course. [HN8] The Declaratory Judgments Act may not be used simply to remove a controversy from a forum where it properly belongs." *Id*. American having failed to establish that the defendant's conduct created a real and reasonable apprehension of liability of the part of the plaintiff, the Court must dismiss this action, without prejudice, for lack of subject matter jurisdiction. Finding no subject matter jurisdiction, the Court need not reach the other motions made by the defendants.

*Conclusion*

For the reasons stated above, the Court finds that there is no justiciable controversy between the parties and that the case must de dismissed for lack of subject matter jurisdiction. The Clerk of Court shall enter judgment for the defendants and close the case. The plaintiff's claims are dismissed without prejudice.

SO ORDERED:

Page 7

1998 U.S. Dist. LEXIS 1527, *13; 46 U.S.P.Q.2D (BNA) 1779

Dated: [*14]  New York, New York                    DENISE COTE

    February 13, 1998                                        United States District Judge