# EXHIBIT J

LEXSEE 1985 US DIST LEXIS 23580


Caution
As of: Oct 23, 2007

**MANUFACTURERS HANOVER CORPORATION, Plaintiff, -against- MAINE SAVINGS BANK, Defendant**

**84 Civ. 2046 (JFK)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1985 U.S. Dist. LEXIS 23580*

**January 9, 1985, Decided; January 10, 1985, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant trademark holder sought dismissal for lack of subject matter jurisdiction and improper venue or transfer of plaintiff trademark registrant's action seeking a declaratory judgment that it was not infringing on the holder's federal trademark rights, and alleging that the holder's opposition to the registrant's use of a mark constituted tortious interference with business.

**OVERVIEW:** The registrant attempted to register a mark with the Trademark Trial and Appeals Board. The holder formally opposed the registration effort and sent letters to the registrant arguing that the registrant's use of the mark would create a likelihood of confusion with the holder's marks. The registrant filed a declaratory judgment action, and the court denied the holder's motion to dismiss but granted the motion to transfer. The court found that an actual controversy existed, as required by the Declaratory Judgment Act, *28 U.S.C.S. §§ 2201-02*, because the registrant perceived a threat by the holder to initiate an infringement action, and the holder's opposition to the registration application indicated that the registrant's fear of litigation was reasonable. The court found that venue was improper under *28 U.S.C.S. § 1391(b)* because the holder was inconvenienced at having to defend the action in the court, as it did all of its business in a different state. Instead of dismissing the action, the court transferred the case to a more appropriate forum under *§ 1406(a)*.

**OUTCOME:** The court denied the holder's motion to dismiss for lack of subject matter jurisdiction. The court found that venue was improper, but rather than dismissing the action, the court transferred it to a proper forum.

**LexisNexis(R) Headnotes**

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > General Overview*
*Constitutional Law > The Judiciary > Case or Controversy > Advisory Opinions*
[HN1] The Declaratory Judgment Act (Act), *28 U.S.C.S. §§ 2201-02*, only permits federal courts to entertain actual, concrete controversies and not hypothetical questions. Any other interpretation of the Act would contravene the case or controversy requirement of U.S. Const. art. III of the United States Constitution. The distinction between actual controversies and hypothetical

Case 1:07-cv-06399-PAC    Document 12-11    Filed 10/23/2007    Page 3 of 7

Page 2
1985 U.S. Dist. LEXIS 23580, *

questions is often difficult and must be determined on a case-by-case basis. The test for determining whether an actual controversy exists is whether the plaintiff has a real and reasonable apprehension that he will be subject to liability. In applying this standard, the court looks to the real and reasonable perceptions of the plaintiff.

*Civil Procedure > Venue > Multiparty Litigation*
[HN2] In the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility -- in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff) -- may be assigned as the locus of the claim.

*Civil Procedure > Venue > Individual Defendants*
*Trademark Law > Federal Unfair Competition Law > False Designation of Origin > Palming Off*
*Trademark Law > Infringement Actions > General Overview*
[HN3] A cause of action arises for trademark infringement where the passing off occurs.

**OPINION BY:** [*1] KEENAN

**OPINION**

JOHN F. KEENAN, United States District Judge:

This action was brought to determine whether Manufacturers Hanover Corporation ("MHC") has the right to use the trademark "FINANCE ONE" ("mark") on its brochures and other advertising. Maine Savings Bank ("MSB"), the movant in this proceeding, challenges MHC's right to use the "FINANCE ONE" mark. MSB alleges that it owns rights in "THE ONE," "ONE MONEY" and other "ONE-containing" marks. MSB charges that MHC's use of the "FINANCE ONE" mark is likely to confuse the public and lead to dilution of MSB's "ONE-containing" marks.

MHC attempted to register the "FINANCE ONE" mark with the Trademarx Trial and Appeals Board ("TTAB"). MSB, however, opposed MHC's registration effort. As a result, MHC brought this action seeking a declaratory judgment that it was not infringing on MSB's federal trademark rights and alleging that MSB's opposition to MHC's use of the mark constitutes tortious interference with business.

In lieu of an answer, MSB has made four alternative motions: (1) To dismiss the case for lack of a justifiable controversy because of lack of subject matter jurisdiction; (2) To dismiss the case for improper venue; (3) [*2] To transfer the case to the United States District Court for the State of Maine; or (4) To stay the case pending a ruling by the TTAB concerning MHC's registration of the mark. For the reasons stated below, MSB's motion to dismiss for lack of subject matter jurisdiction is denied and MSB's motion to transfer is granted.

A. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

[HN1] The Declaratory Judgment Act, ("Act"), *28 U.S.C. §§ 2201-02*, only permits federal courts to entertain actual, concrete controversies and not hypothetical questions. *Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 239-41 (1937)*. Any other interpretation of the Act would contravene the case or controversy requirement of Article III of the United States Constitution. The distinction between actual controversies and hypothetical questions is often *difficult and must be determined* on a case-by-case basis. *Wembly, Inc. v. Superba Cravats, Inc., 315 F.2d 87, 89 (2d Cir. 1963)*; *Nippon Electric Glass Co. v. Sheldon, 489 F. Supp. 119, 121 (S.D.N.Y. 1980)*; *American Cyanamid Corp. v. Ethicon, Inc., 443 F. Supp. 46, 48 (S.D.N.Y. 1977)*; *Blessings Corp. v. Altman, 373* [*3] *F. Supp. 802, 804-05 (S.D.N.Y. 1974)*.

The test for determining whether an actual controversy exists is whether the plaintiff has "a real and reasonable apprehension that ne will be subject to liability." *Societe de Conditionnement v. Hunter Engineering Co., 655 F.2d 938, 944 (9th Cir. 1981)*. In applying this standard, the Court looks to the real and reasonable perceptions of the plaintiff. *Chesebrough-Pond's, Inc. v. Faberge, Inc., 666 F.2d 393, 396 (9th Cir.), cert. denied, 459 U.S. 967 (1982)*. Defendant's acts are only considered to the extent they bear on plaintiff's reasonable perceptions regarding the threat of an infringement action. *Id.*

In the closely related field of patent infringement, the Act has the "salutary effect of preventing patentees from threatening alleged infringers with lawsuits without risking a test of the patent's validity." *Nippon Electric ,*

*489 F. Supp. at 121*; accord *Wembly, 315 F.2d at 89*; *Blessings, 373 F. Supp. at 805*. As a result, this Circuit construed the actual controversy requirement of the Act with considerable liberality. *Wembly, 315 F.2d at 89*; *Nippon Electric, 489 F. Supp. at 121*; *Blessings* [*4], *373 F. Supp. at 805*; *W.R. Grace & Co. v. Union Carbide Corp., 319 F. Supp. 307, 310 (S.D.N.Y. 1970)*. The Ninth Circuit recently lent a liberal interpretation of the Act to a trademark case. *See Chesebrough-Pond's,* 666 *F*.2d at 396. This Court, for the reasons set forth in the aforementioned Second Circuit patent cases and Ninth Circuit trademark case, finds that the actual controversy requirement should be liberally construed in this case as well.

It is the perceptions of the plaintiff, rather than the underlying facts, that are in dispute. On July 28, 1982 MSB sent a letter to MHC indicating that there may be some problems with MHC's use of the "FINANCE ONE" mark. MSB stated that it wanted to talk about MHC's use of the mark and resolve the matter informally. MSB said that it feared that MHC's use of its mark might create a likelihood of confusion with MSb's "ONE-connected" marks, resulting in an erosion of the value of MSBs "ONE-connected" marks.

Significantly, MSB stated that because of the value or its marks it followed an "aggressive" policy designed to prevent similar use by other financial institutions and this occasionally required the initiation of formal [*5] legal proceedings.

On November 5, 1982, MHC sent a letter to MSB indicating that MHC saw no confusion problem and that, in light of the number of banks using marks containing "FIRST" or "ONE," MSB could not monopolize these marks. MHC invited MSB to reveal the geographic and commercial extent of the use of its "ONE-connected" marks. On November 15, 1982, MSB replied that it disagreed with MHC's contention that the "FINANCE ONE" mark was not confusingly similar to MSB's "ONE-connected" marks. MSB also chronicled its use of "ONE-connected" marks from 1971. According to MSB, its customers received material bearing the mark in 48 states and foreign nations and the public was exposed to the mark in electronic media and journals extending beyond Maine.

Subsequently, MHC applied to the TTAB to register the "FINANCE ONE" mark. MSB filed a formal opposition to this application.

MSb maintains that MHC had no reasonable apprehension of an infringement action when it initiated this lawsuit. MSB claims that its letters to MHC reflect a desire to settle the dispute informally rather than through litigation. MSB points out that MHC bid not start this lawsuit until March 31, 1984, belying any notion [*6] that MHC saw a clear and present danger of litigation in MSB's July 1982 letter. MHC's response to this letter allegedly indicated no fear of litigation on its part and MHC only started this action, according to MSb, because it feared an unfavorable decision from the TTAB.

Contrary to MSB's contentions, MHC had a real and reasonable apprehension that a lawsuit would be brought by MSb for infringement. Upon receipt of MSB's July 1982 letter, MHC's "FINANCE ONE" General Counsel opened a "claims" file. He testified that the letter posed a "clear and present danger" of litigation (Killough Dep. 37-40). In view of the content of MSB's July 1982 letter, MHC's seemingly real fear of litigation appears reasonable. MSB's reference to the "aggressive" policy pursued in protecting its mark and MSB's willingness to initiate formal legal proceedings as part of this policy can surely be construed as a threat to institute an infringement action.

In addition, MSB's Opposition Letter to MHC's registration application, while not conclusive evidence of an intent to sue, *see Reo Lobster Inns, Inc. v. New England Oyster House, Inc., 524 F.2d 968, 969 (5th Cir. 1975)* (per curiam); *Topp-Cola* [*7] *Co. v. Coca-Coca Co., 314 F.2d 124, 125-26 (2d Cir. 1963)*; *Merrick v. Sharp & Dohme, Inc., 185 F.2d 713, 716-17 (7th Cir. 1950)* [1], is certainly probative evidence of such an intent. In *Chesebrough-Pond's,* the Ninth Circuit found that a letter indicating an intent to oppose a registration application was sufficient to warrant a reasonable apprehension of litigation on the recipient's part. *666 F.2d at 396-97*. The court found it important that the letter stated that there was a "likelihood of confusion" between the marks in question, thus establishing a prima facie case for trademark infringement under *15 U.S.C. § 1114(1)*. § 66 F.2d at 396-97. MSB's letters to MHC also state there is a likelihood of confusion between "FINANCE ONE" and MSB's "ONE-connected" marks.

>   1   The vital*ity* of Merrick has been questioned in recent years, *see Chesebrough Pond's, 666 F.2d at 396 n.2*, and to the extent *Red Lobster* and *Topp-Cola* rely on *Merrick,* their continuing

vitality is also in doubt. Nonetheless, these cases held that an Opposition Letter alone did not constitute a charge of infringement such as to give rise to an actual controversy under the Act. In this case, MSB's Opposition Letter is merely added evidence of its intent to sue for infringement and is not dispositive or even necessary to finding that MHC had a reasonable apprehension of a lawsuit.

 [*8]  In view of the liberal interpretation accorded the actual controversy requirement of the Act, the Court finds that an actual controversy exists in this case. It is clear that MHC perceived a threat by MSB to initiate an infringement action. Moreover, MSB's letters to MHC and its Opposition Letter to MHC's registration application indicate that MHC's fear of litigation was reasonable.

Accordingly, MSB's motion to dismiss this action for lack of subject matter jurisdiction is denied.

B. *Motion to Dismiss for Improper Venue*

Under 2d U.S.C. *§ 1391(b)*, this action can be brought in any judicial district where all the defendants reside or where the "claim arose." Obviously defendant's Maine residence does not afford a basis for venue in New York. However, venue will be proper in this district if it is a reasonable view of where the claim arose.

In interpreting the "claim arose" language of *§ 1391*, the Supreme Court, in *Leroy v. Great Western Corp., 443 U.S. 173 (1979)*, ruled that the purpose of statutorily specified venue is to "protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Id. at 183-84* (emphasis [*9]  in original). The Court found that it was "absolutely clear that Congress," in using the "claim arose" language "did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts." *Id. at 185*. Thus, the fact that MHC has its headquarters and principal place of business in New York cannot alone provide a basis for venue in this Court.

Yet, "[HN2] in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility -- in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff) -- may be assigned as the locus of the claim." *Id.* (emphasis in original). Thus, the question is first whether this is an unusual case and second, whether, under the three factors articulated in *Leroy*, New York is an equally plausible forum as Maine.

[HN3] A cause of action arises for trademark infringement where the passing off occurs. *Tefal, S.A. v. Products Int'l Co., 529 F.2d* [*10]  *495, 496 n.1 (3d Cir. 1976)*; *Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 639 (2d Cir.), cert. denied*, *352 U.S. 871 (1956)*. Prior cases dealing with the question of where a trademark infringement claim arises for venue purposes have developed a "weight of contacts" test. *Windsor Industries, Inc. v. U.S. Diamond Imports, 549 F. Supp. 415, 417 (S.D.N.Y. 1982)*; *Seabrook Foods v. Seabrook Bros. & Sons, Inc., 495 F. Supp. 792, 793 (S.D.N.Y. 1980)*; *Transamerica Corp. v. Transfer Planning, Inc., 419 F. Supp. 1261, 1263 (S.D.N.Y. 1976)*. The "weight of contacts" test was first applied in this district by Judge Conner in *Honda Associates, Inc. v. Nozawa Trading, Inc., 374 F. Supp. 886 (S.D.N.Y. 1974)*, in which he compared defendant's contacts in the various concerned districts. The claim is deemed to have arisen in the district where the contacts are found to be more than minuscule. *Id. at 892*. This test was followed by the Third Circuit in *Tefal*. There, the court ruled that even where a defendant does only five percent of its total business in a state, venue will be proper if "substantial collar sales of defendants' products took place" [*11]  in the state. *529 F.2d at 496-97*.

The "weight of contacts" test was established oy cases that pre-date *Leroy* and to the extent *Leroy* contradicts the "weight of contacts" test, those cases are of questionable vitality. *German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co., 569 F. Supp. 1529*, 1534 (S.D.N.Y. 1983). However, those cases make clear that trademark infringement rarely occurs in a single district and this case is a good example. MSB contends that its customers receive material bearing "ONE-connected" marks in 48 states and foreign nations. MHC maintains that its "FINANCE ONE" mark is disseminated in 2d states. Obviously, there is an overlap of usage in Maine, New York and several other states. Thus, multi-state trademark infringement cases fall within the definition of an "unusual case" as the term was used oy the Supreme Court in *Leroy*.

Venue, therefore, is proper in this Court if, based on the availability of witnesses, the accessibility of relevant evidence and the convenience of the defendant, this district is as much the locus of this claim as Maine. In terms of convenience of witnesses, MSB has several witnesses in Maine [*12] and MHC has several witnesses in New York. Similarly, relevant evidence is apparently divided fairly equally between Maine and New York.

The critical factor, in this particular inquiry, is the convenience of the defendant. Defendant does almost all its business in Maine. This is not to say that defendant is without New York contacts, [2] but the exact quantity or percentage of MSB's contacts need not be specified. [3] MSB is clearly inconvenienced at having to defend this action in New York. Thus, with the other two factors balanced equally between New York and Maine, the Court has no choice but to find that venue is improper. As the Supreme Court noted in *Leroy*: "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Leroy, 443 U.S. at 184 n.18* (quoting *Olberding v. Illinois Central R. Co., 346 U.S. 338, 340 (1953))*. The "claim arose" language was added to *§ 1391* to close the "venue gaps" that existed under earlier versions of the statute in situations in which multiple tort-feasors could not be sued jointly because they resided in different [*13] districts. *Leroy, 443 U.S. at 184 n.17* (citing *Brunette Machine Works v. Kockum Industries, 406 U.S. 706, 710 n.8 (1972))*. The language was not designed to permit MHC, which does much more business in Maine than MSB does in New York, to drag MSB into a trademark battle in this Court.

> 2   MSB has made loans to and taxes deposits from persons with New York addresses. Most of these persons began business with MSB when they were Maine residents. Brochures bearing "ONE-containing" marks are sent to these customers at New York addresses. These customers comprise a very small percentage of MSB's business. MSB does a fraction of its business with New York banks, including the issuance of its credit cards from the Key bank of Albany, New York, which underwrites the credit. In addition, a small amount of MSB radio and print advertising involving "ONE-containing" marks reaches into New York.

> 3   It is the view of this Court that *Leroy* is controlling authority. Some courts, however, have continued to adhere to the "weight of contacts" test since *Leroy*. See *Moyglare Stud Farm, Ltd. v. Due Process Stable, Inc., 562 F. Supp. 289, 291 (S.D.N.Y. 1983)*; *Windsor Industries, 549 F. Supp. at 417*; *Seabrook Foods, 495 F. Supp. at 793*. It is clear that under the "weight of contacts" test a plaintiff has no right to bring suit where any part of the claim, however small, arose. *Moyglare, 562 F. Supp. at 291* (citing *Honda, 374 F. Supp. at 892*). Venue is proper only in a district in which a substantial part of the claim arose. *Cf. Seabrook Foods, 495 F. Supp. at 793-94* (approximately one-sixth of a company's sales in a state is not substantial enough to provide a basis for venue); *Honda, 374 F. Supp. at 892* (mailings into New York do not provide a substantial enough basis for venue). The contacts between MSB and New York are insubstantial when viewed in the context of MSB's entire operation. Thus, the "weight of contacts" test, to the extent it is still vital, has not been satisfied.

[*14] C. *Motion to Transfer*

Even upon finding improper venue, it has been the practice of many judges of this Court to transfer similar cases to a more appropriate forum. *See*, *e.g.*, *German Educational Television, 569 F. Supp. at 1534*; *Windsor Industries, 549 F. Supp. at 417*; *Seabrook Foods*, § 95 F. Supp. at 794; *Honda, 374 F. Supp. at 692*. The interests of justice require that this case be transferred, pursuant to *28 U.S.C. § 1406(a)*, to the United States District Court for the State of Maine. [4]

> 4   In view of this Court's decision to transfer this action to Maine, defendant's motion to stay this action pending a decision by the TTAB on MHC's trademark registration application is more appropriately left for the District Court in Maine to decide.

*CONCLUSION*

MSB's motion to dismiss for lack of subject matter jurisdiction is denied. Venue in this district is improper. Rather than dismissing this action for want of proper venue, however, the court invokes its power under *28 U.S.C. § 1406(a)* to transfer this case to the United States District Court [*15] for the State of Maine.

Page 6

1985 U.S. Dist. LEXIS 23580, *15

SO ORDERED.                                    JOHN F. KEENAN, U.S.D.J.